UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ELVIS RENTERIA CAMILO LOPEZ,<br><br>            Plaintiff,<br><br>    v.<br><br>DONALD SWIFT, et al.,<br><br>            Defendants. | NO:  12-CV-5099-TOR<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS |

BEFORE THE COURT are motions to dismiss filed by all Defendants (ECF Nos. 43, 46, 54).  These matters were submitted for consideration without oral argument.  The Court has reviewed the completed briefing and the record and files herein, and is fully informed.

BACKGROUND

This lawsuit arises from Plaintiff's repeated suicide attempts while imprisoned at the Benton County Jail.  Plaintiff alleges that multiple corrections officers provided him with razor blades and expressly encouraged him to commit

ORDER ON MOTIONS TO DISMISS ~ 1

suicide.  Plaintiff further alleges that jail staff failed to provide adequate mental health treatment following each of his suicide attempts.  Defendants have moved to dismiss Plaintiff's claims for failure to exhaust administrative remedies.

## FACTS

The following facts are drawn primarily from Plaintiff's Second Amended Complaint ("SAC") and are accepted as true for purposes of the instant motions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Plaintiff was arrested for an unspecified offense on April 13, 2010.  Pl.'s SAC, ECF No. 12, at ¶ 1.  Prior to being taken into custody, Plaintiff was suicidal and held a knife to his neck.  Pl.'s SAC, ECF No. 12, at ¶ 1.  Plaintiff was subsequently booked into the Benton County Jail for pretrial detention.  Pl.'s SAC, ECF No. 12, at ¶ 1.

On April 15, 2010, Plaintiff attempted suicide by cutting the stitches out of a laceration on his left wrist.  Pl.'s SAC, ECF No. 12, at ¶ 2.  Plaintiff was treated by jail staff and moved to a "rubber room" for his own safety.  Pl.'s SAC, ECF No. 12, at ¶ 2.  Plaintiff subsequently requested a "mental health follow-up," but did not receive one.  Pl.'s SAC, ECF No. 12, at ¶ 2.

On August 16, 2010, corrections officer Donald Swift ("Defendant Swift") approached Plaintiff and stated, "Personally, I don't care if you kill yourself, if I were to kill myself and be serious about it, I would cut my jugular vein like this."  Pl.'s SAC, ECF No. 12, at ¶ 4.  Approximately ten days later, Plaintiff relayed the

1  substance of this statement to corrections officer M. Arrendondo.  Pl.'s SAC, ECF

2  No. 12, at ¶ 5.  Fearing for his safety, Plaintiff did not identify Defendant Swift as

3  the source of the statement.  Pl.'s SAC, ECF No. 12, at ¶ 5.

4      On or about August 31, 2010, Plaintiff was seen by the Benton County Jail's

5  contract physician, Dr. Walter Cooper ("Defendant Cooper").  Pl.'s SAC, ECF No.

6  12, at ¶ 6.  Plaintiff informed Defendant Cooper of the statement made by

7  Defendant Swift.  Pl.'s SAC, ECF No. 12, at ¶ 6.  Defendant Cooper responded

8  with a laugh and later advised Plaintiff to follow up with a mental health provider.

9  Pl.'s SAC, ECF No. 12, at ¶ 6.

10     On or about October 22, 2010, Plaintiff contacted a mental health counselor

11 named Lyn Smith ("Defendant Smith") employed by Lourdes Counseling Center

12 ("Defendant Lourdes").[1]  Pl.'s SAC, ECF No. 12, at ¶ 7.  In response to Defendant

13 Smith's questions about his symptoms, Plaintiff indicated that he was depressed,

14 that he was "seeing things," that he was "hearing things," and that he generally

15 needed mental health counseling.  Pl.'s SAC, ECF No. 12, at ¶ 7.  Defendant Smith

16

17

_____

18 [1] Defendant Smith is identified in Plaintiff's SAC as Jane Doe.  Defendant Lourdes

19 is erroneously identified as Krondellet Mental Health.  In the interest of clarity, the

20 Court will refer to these Defendants by their actual names.

ORDER ON MOTIONS TO DISMISS ~ 3

1    responded by advising Plaintiff to "sign up for sick call." Pl.'s SAC, ECF No. 12,

2    at ¶ 7.

3           On or about October 22, 2010, Plaintiff attempted suicide for a second time.

4    Pl.'s SAC, ECF No. 12, at ¶ 8. Plaintiff was treated by jail staff and once again

5    placed in a "rubber room" for his own safety. Pl.'s SAC, ECF No. 12, at ¶ 8.

6    Three days later, corrections officers Jorge Garcia ("Defendant Garcia") and Jesus

7    Alvarez ("Defendant Alvarez") slid an altered razor blade under the door of the

8    "rubber room" while Plaintiff was inside. Pl.'s SAC, ECF No. 12, at ¶ 9. After

9    receiving the blade, Plaintiff cut his right wrist in a third attempt at suicide. Pl.'s

10   SAC, ECF No. 12, at ¶ 9. Defendants Garcia and Alvarez subsequently found

11   Plaintiff bleeding in his cell and administered first aid. Pl.'s SAC, ECF No. 12, at

12   ¶ 10.[2]

13          On or about January 21, 2011, Defendant Swift approached Plaintiff while

14   an unidentified female was processing Plaintiff's commissary order. Pl.'s SAC,

15   ECF No. 12, at ¶ 11. Defendant Swift stated to Plaintiff, "I don't care if Elvis kills

16   himself, I don't have to worry about it. I can just go home and not worry about it."

17

18

19   _____

     [2] Plaintiff's SAC contains two successive paragraphs numbered 10. In the interest

20   of clarity, the latter of these two paragraphs has been designated Paragraph 10A.

ORDER ON MOTIONS TO DISMISS ~ 4

1   Pl.'s SAC, ECF No. 12, at ¶ 11.  Defendant Swift made "direct eye contact" with

2   Plaintiff as he made this statement.  Pl.'s SAC, ECF No. 12, at ¶ 11.

3          On or about May 20, 2011, Defendant Swift gave Plaintiff an altered razor

4   blade while Plaintiff was in his cell.  Pl.'s SAC, ECF No. 12, at ¶ 13.  As he slid

5   the razor under Plaintiff's cell door, Defendant Swift stated, "Here, kill yourself!"

6   Pl.'s SAC, ECF No. 12, at ¶ 13.  This incident was witnessed by Plaintiff's cell

7   mate, Taylor Smith, who wrote a statement documenting what Defendant Swift

8   said.  Pl.'s SAC, ECF No. 12, at ¶ 13.  Plaintiff later returned the razor to

9   Defendant Swift in the presence of a nurse.  Pl.'s SAC, ECF No. 12, at ¶ 13.

10         On or about March 6, 2012, Plaintiff observed Defendant Swift and another

11  corrections officer walking around in his cell while Plaintiff was eating dinner in a

12  common area.  Pl.'s SAC, ECF No. 12, at ¶ 14.  Upon returning to his cell after

13  dinner, Plaintiff discovered an altered razor blade on the floor of his cell.  Pl.'s

14  SAC, ECF No. 12, at ¶ 14.  Plaintiff surrendered the razor to his attorney a few

15  days later.  Pl.'s SAC, ECF No. 12, at ¶ 14.  A short time later, an unidentified

16  Corporal asked Plaintiff where he had obtained the razor.  Pl.'s SAC, ECF No. 12,

17  at ¶ 14.  Plaintiff responded that the razor had been given to him by Defendant

18  Swift.  Pl.'s SAC, ECF No. 12, at ¶ 14.

19  //

20  //

1

DISCUSSION

2        The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust

3 their administrative remedies prior to filing constitutional claims in federal court.

4 The applicable statute provides:

5        No action shall be brought with respect to prison conditions under
         section 1983 of this title, or any other Federal law, by a prisoner
6        confined in any jail, prison, or other correctional facility until such
         administrative remedies as are available are exhausted.

7 42 U.S.C. § 1997e(a).  The purpose of this exhaustion requirement is twofold.

8 First, exhaustion "gives an agency an opportunity to correct its own mistakes with

9 respect to the programs it administers before it is haled into federal court."

10 *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation and citation omitted).

11 Second, exhaustion promotes efficient resolution of claims, which "generally can

12 be resolved much more quickly and economically in proceedings before an agency

13 than in litigation in federal court."  *Id.*

14        Although the PLRA does not define the phrase "action . . . brought with

15 respect to prison conditions," the Supreme Court has construed the exhaustion

16 requirement broadly to apply to "all inmate suits about prison life, whether they

17 involve general circumstances or particular episodes, and whether they allege

18 excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

19 Proper exhaustion under § 1997e(a) "demands compliance with an agency's

20 deadlines and other critical procedural rules."  *Woodford*, 548 U.S. at 90-91.  The

ORDER ON MOTIONS TO DISMISS ~ 6

prisoner must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009).

Failure to exhaust administrative remedies under the PLRA is an affirmative defense which a defendant must prove by a preponderance of the evidence. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). A motion to dismiss for failure to exhaust administrative remedies is treated as "a matter in abatement, which is subject to an unenumerated Rule 12(b) motion." *Id.* In ruling upon such a motion, "the court may look beyond the pleadings and decide disputed issues of fact. If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Id.* at 1120.

**A. Exhaustion of Administrative Remedies**

Defendants argue that Plaintiff failed to exhaust his administrative remedies as to all claims asserted against them. Specifically, they argue that (1) Plaintiff filed all but one of his grievances beyond the ten-day deadline imposed by the Benton County Jail's posted grievance procedure; (2) Plaintiff failed to appeal his one timely grievance to the next level; and (3) Plaintiff never filed any grievances concerning the mental health care provided by Defendants Lourdes and Lyn Smith. ECF No. 43 at 14-15; ECF No. 64 at 3-4; ECF No. 54 at 2-6. Given that Plaintiff was aware of the relevant grievance procedures and "simply failed to properly

1    manage the deadlines and procedural rules," Defendants argue, his claims must be

2    dismissed.  ECF No. 64 at 4.

3           Plaintiff concedes that all but one of his grievances were untimely and that

4    he did not grieve the care provided by Defendants Lourdes and Smith.  He has,

5    however, offered three separate reasons why his claims should not be dismissed.

6    First, Plaintiff argues that his grievances related to a "chronic" medical condition

7    and were therefore timely to the extent that "the prison officials retain[ed] the

8    power to do something about it."  ECF No. 63 at 1-2 (citing *Ellis v. Vadlamudi*,

9    568 F. Supp. 2d 778, 783-84 (E.D. Mich. 2008)).  Second, Plaintiff contends that

10   his failure to file timely grievances should be excused because "[his] mind was too

11   clouded by [his] major depression disorder" to adhere to the ten-day requirement.

12   ECF No. 63 at 3 (citing Macahilas v. Taylor, Case No. CIV-S-06-0502-GEB, 2008

13   WL 220364 (E.D. Cal., Jan. 25, 2008) (unpublished)).  Third, Plaintiff asserts that

14   his administrative remedies were exhausted because Defendants responded to his

15   untimely grievances on the merits.  ECF No. 63 at 4 (citing *Ellis*, *supra*).

16          Defendants failed to respond to Plaintiff's first argument.  Nevertheless, the

17   Court finds the argument unavailing.  As explained in *Ellis*, the exception to the

18   administrative exhaustion requirement for grievances concerning "chronic medical

19   conditions" does not apply when "the time of the failure to treat (and therefore the

20   time of the Eighth Amendment violation) can be determined with some precision."

568 F. Supp. 2d at 783.  For example, when a prison fails to treat an inmate for an "acute" medical condition such as a heart attack or a diabetic coma, "the time limit for filing a grievance can be readily established." *Id.*  Applying that reasoning here, the Court finds that Plaintiff's depression and attempts at suicide were more akin to "acute" medical conditions than "chronic" medical conditions.  By his own admissions, Plaintiff's depression varied in severity while he was incarcerated, ranging from moderate to suicidal.  Furthermore, each of Plaintiff's suicide attempts (as well as the statements and actions which allegedly preceded them) are discrete events from which the ten-day time limit for filing a grievance can be readily calculated.  Accordingly, there is no basis for excusing Plaintiff's failure to file timely grievances on a so-called "continuing violation" theory.

The record does not support Plaintiff's second contention that he was "too clouded" by his depression to file timely grievances.  ECF No. 63 at 3.  As Defendants correctly note, Plaintiff filed two grievances unrelated to his present claims following his first suicide attempt on April 15, 2010.  *See* ECF No. 44-1 at 6, 8.  The fact that Plaintiff was able to file unrelated grievances during this time indicates that he was well enough to file timely grievances pertaining to the events at issue in this case.

Defendants also failed to respond to Plaintiff's third argument: that his administrative remedies should be deemed properly exhausted because Defendants

ORDER ON MOTIONS TO DISMISS ~ 9

1  responded to his untimely grievances on the merits.  This argument has

2  considerable merit.  Several courts have held that a prison's response to an

3  inmate's untimely grievance on the merits satisfies the administrative exhaustion

4  requirement.  *See, e.g.*, *Ellis*, 568 F. Supp. 2d at 785 ("The Courts that have

5  considered this issue have held that a prisoner who files a late complaint that is

6  nevertheless addressed by the prison system has properly exhausted his

7  administrative remedies." (citing cases)); *Jones v. Stewart*, 457 F. Supp. 2d 1131,

8  1136 (D. Nev. 2006).  As explained in *Jones*, a response on the merits of an

9  untimely grievance serves the underlying purposes of the administrative exhaustion

10  requirement: to protect administrative agency authority and to promote efficient

11  resolution of inmate grievances.  457 F. Supp. 2d at 1136-37.  Accordingly, a

12  prison official who responds on the merits to an untimely grievance which has

13  been appealed through all available levels of administrative review cannot later cite

14  the untimeliness of the grievance as a basis for dismissal for failure to exhaust

15  administrative remedies.  *Id.*

16      The Court's review of the materials attached to Defendant Guerrero's

17  declaration (ECF No. 44) indicates that one of Plaintiff's untimely grievances was

18  appealed through all levels of the Benton County Jail's administrative review

19  process and was addressed on the merits at each level.  On May 24, 2011, Plaintiff

20  filed a grievance alleging that an unknown corrections officer slid a razor blade

ORDER ON MOTIONS TO DISMISS ~ 10

1  under the door of the "rubber room" on October 25, 2010, while Plaintiff was on

2  suicide watch on October 25, 2010.  ECF No. 44-1 at 16.  Defendant Felton

3  responded to this grievance on May 24, 2011, stating that jail officials "have no

4  reason to believe that an officer gave [the razor blade] to you."  ECF No. 44-1 at

5  17.  She did not deny the grievance as untimely.  Plaintiff filed a second grievance

6  concerning the same incident on July 10, 2011, which was identical to the first

7  grievance in all material respects.  ECF No. 44-2 at 31.  Defendant Felton denied

8  this grievance on July 11, 2011, stating that prison officials had "investigated [the

9  incident] at the time and found it not to be true."  ECF No. 44-2 at 33.  Although

10  the denial mentions that the incident in question occurred "9 [months] ago," it does

11  state that the grievance was untimely.  Plaintiff appealed this decision two days

12  later.  ECF No. 44-2 at 38.  Defendant Daniel denied Plaintiff's appeal on July 19,

13  2011, indicating that (1) Plaintiff's complaints about Defendant Swift had

14  previously been addressed, and (2) jail officials would not entertain any further

15  grievances or questions on that topic.  ECF No. 44-3 at 57.  Defendant Daniel did

16  not deny the grievance as untimely.  Thus, the Court finds that this grievance was

17  properly exhausted.  Each of Plaintiff's remaining untimely grievances was denied

18  (at least in part) on timeliness grounds.  Accordingly, all claims relating to these

19  grievances must be dismissed for failure to exhaust administrative remedies.

20

Finally, with regard to Plaintiff's one timely grievance, the Court is not persuaded that Plaintiff's "failure to appeal" amounts to a failure to exhaust administrative remedies. On March 9, 2012, Plaintiff submitted the following grievance:

> On March 6th, 2012 C/O Swift came in for Pod 201 dinner. He was walking excessively around the cell doors. Upon entering my cell I found a razor on my floor. C/O Swift has given me a razor before and told me to kill myself. On that occasion I gave the razor to the nurse and was punished and taken to the hole. Today March 8, 2012 my attorney came to see me and I gave him the razor and told him what happened. Then Corporal Brooks came and spoke with me and I expressed my concern for my safety with C/O Swift trying to influence me to harm myself.

ECF No. 44-3 at 58. Sergeant D. Schaefer responded to the grievance on March 11, 2012. The response reads: "The concerns you state in your grievance have been noted and will be addressed." ECF No. 44-3 at 59. There is no indication what action, if any, was actually taken in response to the grievance. Nor is there a record of any further communication with Plaintiff about the grievance.

Plaintiff can hardly be faulted for "failing to appeal" this response. Indeed, there is nothing to "appeal" one way or the other; Plaintiff was simply told that his concerns "[would] be addressed" in some unspecified manner in the future. This response strongly implies that further action—or at a minimum, further communication—would be forthcoming. Under these circumstances, Plaintiff could not have been expected to appeal Sgt. Schaefer's response to the next level.

Accordingly, the Benton County Defendants have failed to demonstrate that exhaustion was improper as to this grievance.

In sum, all claims arising from the following alleged incidents may proceed:

- Plaintiff being provided with a razor blade on or about October 25, 2010, while being held in the "rubber room"; and

- Plaintiff discovering a razor blade on the floor of his cell on or about March 6, 2012.

All remaining claims will be dismissed without prejudice for failure to properly exhaust administrative remedies.

## B. The Exhaustion Requirement Applies to Claims Against Defendants Walter Cooper, M.D., Lourdes Counseling Center, and Lyn Smith

Defendants Cooper, Lourdes and Smith contend that the administrative exhaustion requirement applies to the claims against them even though their services were provided pursuant to a private contract with the Benton County Jail. ECF No. 46 at 3-7; ECF No. 54 at 4-6. The Court agrees. The operative inquiry is whether an administrative remedy was "available" as to misconduct allegedly committed by these Defendants. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought . . . until such administrative remedies *as are available* are exhausted.") (emphasis added). Defendant Cooper has averred that, as a physician under contract with the Benton County Jail, his actions were grievable under the jail's grievance procedure. Cooper Decl., ECF No. 47, at ¶¶ 6-8. Similarly, Defendant Smith has averred that her employer, Defendant Lourdes, contracted with the jail

ORDER ON MOTIONS TO DISMISS ~ 13

to provide mental health services and that jail policy required inmates to submit any complaints about the care they received as a grievance.  Smith Decl., ECF No. 55 at ¶¶ 3-5.  Thus, the Court finds that an administrative remedy was "available" within the meaning of § 1997e(a) as to any malpractice or constitutional violations allegedly committed by Defendants Cooper, Lourdes or Smith.  The fact that Plaintiff may have been subjectively unaware of this remedy is insufficient to excuse his failure to exhaust.  *Albino v. Baca*, 697 F.3d 1023, 1038 (9th Cir. 2012). Because Plaintiff could have discovered that the grievance remedy applied to these Defendants with reasonable effort, his claims against them must be dismissed.  *See id.* at 1037 ("For an inmate to claim that a prison's grievance procedure was effectively unavailable due to the inmate's [subjective] unawareness of the procedure, the inmate must show that the procedure was not known and unknowable with reasonable effort.").

**IT IS HEREBY ORDERED:**

1.  The Motions to Dismiss filed by Defendants Walter Cooper, M.D., Lourdes Counseling Center (erroneously named as Krondellet Mental Health) and Lyn Smith (identified as Jane Doe) (ECF Nos. 46 and 54) are **GRANTED**.  All claims against these Defendants are **DISMISSED** without prejudice.  The case caption shall be amended to reflect the dismissal of these parties.

ORDER ON MOTIONS TO DISMISS ~ 14

2.  The Motion to Dismiss filed by Defendants Donald Swift, Jesus Alvarez, Jr., Jorge Garcia, Robert Guerrero, Sharon Felton, Al Thompson, Cathy Daniel, Jerry Hatcher, Steve Keane and Carolyn Harris (ECF No. 43) is **GRANTED in part** and **DENIED in part**.  All claims arising from the following alleged events may proceed:

- Plaintiff being provided with a razor blade on or about October 25, 2010 while being held in the "rubber room"; and

- Plaintiff discovering a razor blade on the floor of his cell on or about March 6, 2012.

All other claims are **DISMISSED** without prejudice.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel and Plaintiff at his current address of record.

**DATED** September 3, 2013.



THOMAS O. RICE
United States District Judge

ORDER ON MOTIONS TO DISMISS ~ 15