UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ELVIS RENTERIA CAMILO LOPEZ,<br><br>                         Plaintiff,<br><br>   v.<br><br>DONALD SWIFT,<br>JESUS ALVAREZ,<br>JORGE GARCIA, and<br>CAROLYN HARRIS,<br><br>                         Defendants. | NO: 12-CV-5099-TOR<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

A bench trial was held in this matter on March 23, 2015. Plaintiff was represented by Mitch Harrison. Defendants were represented by Ryan J. Lukson. At the close of Plaintiff's case-in-chief, Defendants made an oral motion for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c). The Court granted the motion. This order supplements the Court's oral ruling.

//

//

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 1

**BACKGROUND**

Plaintiff, acting *pro se*, filed his original complaint in this matter in July 2012. ECF No. 1. A third amended complaint was filed in March 2014. ECF No. 96. On July 1, 2014, the Court denied Plaintiff's motion for summary judgment. ECF No. 121. On September 16, 2014, the Court denied in part and granted in part Defendants' motion for summary judgment. ECF No. 145. In that order, the Court ruled that Plaintiffs' allegations that Defendants Swift, Garcia, Alvarez, and Corporal Harris provided him with razor blades, or conspired to conceal such an action, were not appropriate for resolution on summary judgment and would proceed to trial. *Id.* at 2–6. Plaintiff's counsel filed a notice of appearance on December 1, 2014. ECF No. 163. The case proceeded to a bench trial which was held on March 23, 2015. ECF No. 178. At the trial, Plaintiff testified on his own behalf. Plaintiff offered no other evidence before closing his case-in-chief. Defendants moved for judgment under Federal Rule of Civil Procedure 52(c). The Court granted the motion.

**STANDARD**

During a bench trial, "[i]f a party has been fully heard on an issue . . . and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c). The

Court's judgment "must be supported by findings of fact and conclusions of law as required by Rule 52(a)." *Id.* "In deciding whether to enter judgment on partial findings under Rule 52(c), the district court is not required to draw any inferences in favor of the non-moving party; rather, the district court may make findings in accordance with its own view of the evidence." *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006).

**FINDINGS OF FACT**

Plaintiff was the only witness to offer testimony at the bench trial. No evidence was offered beyond his testimony. Plaintiff has suffered from mental health issues since he was young. He has also struggled with alcoholism. On the morning of April 13, 2010, Plaintiff had an argument with his girlfriend and began drinking. At some point that morning, Plaintiff blacked out and awoke later in Benton County jail.[1] Plaintiff learned from filings in a criminal case that he had been "rampaging" about, stating that he would kill himself. At the time of Plaintiff's booking he executed a mental health screening report that indicated he has never been suicidal.

On April 15, 2010, Plaintiff obtained a razor blade by removing it from a

---

[1] All Plaintiff's allegations arise during the two and one half years he was being held in pretrial detention for certain unspecified charges.

standard-issue razor provided to him by the jail and used it to cut his wrists.[2] Plaintiff was taken to the hospital and later returned to the jail. Plaintiff began to see a mental health specialist at the jail and to receive medication for his depression and anxiety. Plaintiff testified that he variously experienced hallucinations of visual colors, seeing shadows and hearing voices, muttering or low tone whispering. Plaintiff testified that he believed his medications caused various side effects, made him tired, he had trouble keeping track of time, he was laying down all the time and at other times he was sleep deprived. He testified that at times he was so heavily medicated that he was in a cloud and at other times he quit his medication all together.

On October 23, 2010, Plaintiff obtained an altered razor blade from a fellow inmate. He used that razor blade to cut his left wrist. Plaintiff was again taken to the hospital. After returning to the jail, Plaintiff was placed on suicide watch in a padded cell behind the jail's intake booking area. Prior to being placed in the cell, Plaintiff was checked for contraband. The area behind the intake desk was a secure area not accessible by other inmates, except those who bring meals or clean

---

[2] Inexplicably and somewhat inconsistent with Plaintiff's allegations, Plaintiff testified that he was given access to razor blades throughout the entire time he stayed in the Benton County jail.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 4

under the supervision of jail security staff.  The cell had a small opening under the door of less than an inch.  The only items Plaintiff took into the cell with him were his clothing and a blanket.

On October 25, 2010, Plaintiff discovered a razor blade which someone had slid beneath the door to the cell.  Plaintiff used it to cut his right wrist.  After a time, Defendant Garcia and another officer came into the room and asked Plaintiff what had happened and where he had obtained the razor blade.  Plaintiff responded, "You know, you guys should know."  After Plaintiff was bandaged, he was left with Defendants Garcia and Alvarez.  Garcia was looking at Plaintiff and appeared as if he was about to say something when Alvarez said to Garcia in Spanish, "Don't say nothing."  Defendant Harris then allegedly came in and told Garcia and Alvarez, "Don't worry, I got your back, you know what I'm saying."

Present in the area of the padded cell that day were Defendants Alvarez, Garcia, and Harris, along with a couple of other guards Plaintiff did not know and who are not named defendants in this matter.  Plaintiff did not see who slide the razor blade under the door.  Plaintiff also did not hear anything to indicate who may have done so.  Plaintiff testified he "suspected" the blade was placed there by Benton County guard staff "because of the things that were said, you know, from the officers."

Plaintiff testified that he did not believe an investigation of the incident was undertaken at any time. He did not recall any Benton County staff collecting evidence. He saw a small red bag he identified as a hazard bag that caused Plaintiff to believe the staff was disposing of evidence at that time instead of preserving it. He only learned at a later point that pictures had actually been taken. No records of the October 25 event or of any subsequent investigation were introduced as evidence.

While in Benton County jail, Plaintiff filed numerous grievances. He filed at least two grievances prior to the October 25, 2010 incident. Thus, Plaintiff was aware of and knew how to use the grievance system by October 2010. However, Plaintiff did not file a grievance regarding the October 25 incident until May 24, 2011, over six months after his suicide attempt.

Plaintiff testified further that on a couple of occasions, Defendant Swift encouraged Plaintiff to commit suicide. According to Plaintiff, in August 2010, Plaintiff was walking by a guard station when Swift said something to get Plaintiff's attention. Swift then told Plaintiff, "Personally, I don't care if you kill yourself," and, "If I were to kill myself, I would cut my jugular . . . like this," at which point Swift drew his finger across his neck. At the time, Plaintiff thought Swift was joking, but looking back on it he does not think it was funny. In January 2011, Plaintiff purchased items from the jail store that were delivered to his cell.

Plaintiff testified that Swift told Plaintiff, in the presence of the woman distributing the items, "I don't care if [Plaintiff] kills himself, I don't have to worry about it, I can just go home."

Plaintiff also alleged that Swift had supplied Plaintiff with razor blades on two occasions. On May 26, 2011, Plaintiff was in between sleep and being awake when he heard someone kick his cell door. Plaintiff did not see who it was because he was facing the wall of his cell. A razor had been slipped under Plaintiff's door. Plaintiff got up and saw Swift walking on the other side of the cell block. All inmates were locked down at that time. After a while, Swift came over to Plaintiff's cell. Plaintiff told him that he wanted to speak with a sergeant. Swift asked Plaintiff why he needed to speak with the sergeant. Swift returned later with a nurse who was distributing medication. Plaintiff gave the razor blade he had discovered to the nurse.

On March 6, 2012, Plaintiff was sleeping when his cellmate woke him for dinner. Plaintiff claimed her was the last one to leave his cell and the first to return. Plaintiff saw Swift and another officer were on the cell block. Plaintiff saw Swift walk along his side of the tier, pushing doors open as if he were looking for something. Plaintiff found it odd that after Swift passed his door, "he just went through all the other tiers normal." Plaintiff testified he was the first inmate to return to his cell, at which point he discovered a razor on the floor. Plaintiff did

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 7

not see Swift place a razor blade in his cell. Plaintiff concluded that Swift must have placed the razor in his cell based upon Swift's previous comments encouraging Plaintiff's suicide.

## CONCLUSIONS OF LAW

To succeed on his § 1983 "deliberate indifference" claims, Plaintiff must prove by a preponderance of the evidence that (1) the Defendants were subjectively aware of a substantial risk of serious harm to Plaintiff and (2) the Defendants did not act reasonably to abate that risk. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).[3] In the circumstances of this case, Plaintiff has alleged that the Defendants acted unreasonably by providing him with razor blades in face of the substantial risk that he would use them in an attempt to kill himself. Specifically, the Court reviews the evidence of three instances where razor blades were allegedly provided: October 25, 2010; May 26, 2011; and March 6, 2012. The Court also reviews Plaintiff's evidence that the Defendants conspired to conceal evidence of the October 25, 2010, incident.

---

[3] While the suit in *Farmer* was founded on the Eighth Amendment, the "deliberate indifference" standard also applies to pre-trial detention cases such as this matter. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1244 (9th Cir. 2010).

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 8

Given Plaintiff's previous suicide attempts and the fact that he was placed on administrative suicide watch by the County jail, the Court concludes that Defendants were aware of the substantial risk access to razor blades would present to Plaintiff. *See Grenning v. Miller-Stout*, 739 F.3d 1235, 1239 (9th Cir. 2014) ("Knowledge of a risk of harm can be inferred where that risk is 'obvious' . . . ."). The Court also concludes that the provision of razor blades to Plaintiff would be an unreasonable act indicating deliberate indifference to the substantial risk posed by such an action, while Plaintiff was mentally unstable. The question before the Court is whether, for each instance, Plaintiff has proven by a preponderance of the evidence that a named Defendant provided him with a razor blade.

Plaintiff was not able to see who slid the razor blade under the door to his padded cell on October 25, 2010. The area immediately around the cell was secured from access by unsupervised inmates. Given that Plaintiff attempted suicide with a razor blade while locked in a padded safety cell, the Court concludes that it is likely a staff member violated Plaintiff's civil rights on this occasion. Nevertheless, Plaintiff has not proven by a preponderance of evidence *which* staff member is responsible for this act.

Plaintiff testified that he assumed it was Defendants Garcia and Alvarez based upon Alvarez's comment, "Don't say nothing."[4] However, at this stage in the proceedings, unlike at summary judgment, the Court is not required to make all inferences in Plaintiff's favor. *Ritchie*, 451 F.3d at 1023. The Court cannot reasonably infer from this single comment that Defendants Garcia and Alvarez committed the alleged act either individually or by agreement together. Moreover, these two Defendants were not the only people present outside of Plaintiff's cell on that day, as Plaintiff testified that other, unidentified guards were also in the area. The Court cannot conclude it is more likely than not that either Defendant Garcia or Defendant Alvarez placed the razor blade in Plaintiff's cell. Given the Court's findings, Plaintiff has not proven his § 1983 claim for the October 25, 2010 incident.

Plaintiff argues as a separate claim that Defendant Alvarez's comment, combined with Defendant Harris's statement and the alleged lack of an

---

[4] Plaintiff's counsel argued that Defendant Swift's comments also evidenced deliberate indifference. However, Swift was not present for the October 25, 2010 incident, and the Court will not impart any meaning from Swift's words upon the actions of Defendants Garcia, Alvarez, and Harris. The Court evaluates Plaintiff's case against Swift below.

investigation, implies that the Defendants conspired to violate his civil rights. To succeed on § 1983 conspiracy claim, Plaintiff must show the existence of an express or implied agreement to violate his constitutional rights and actual deprivation of his rights resulting from that agreement. *See Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991). "A conspiracy to deprive a plaintiff of a civil rights action by lying or concealing evidence might constitute such an actionable deprivation." *Id.*

The Court cannot reasonably conclude from the ambiguous statements of Defendants Alvarez and Harris that there was an agreement to conceal evidence. In his argument, Plaintiff relies heavily on the alleged lack of an investigation to support his conclusion. But, to the contrary, Plaintiff acknowledged that there were in fact photos taken. It was Plaintiff's burden to establish evidence, direct or circumstantial, indicating there was a conspiracy. Plaintiff's allegation, unsupported by any evidence, that the incident was not properly investigated is not sufficient to carry his burden. Plaintiff presented insufficient evidence to show there was a conspiracy by any of the Defendants to violate his civil rights. With this finding, Plaintiff has not proven by a preponderance of the evidence his § 1983 conspiracy claim.

As with the October 25, 2010 incident, Plaintiff has no direct evidence of who placed the razor blades in his cell on May 26, 2011 or on March 6, 2012.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 11

Plaintiff relies upon Defendant Swift's proximity to his cell on each occasion and upon Defendant Swift's previous statements encouraging suicide to infer that Defendant Swift put the razor blades in his cell. The Court cannot conclude from this evidence alone that it is more likely than not that Defendant Swift is responsible.

During the May 26, 2011 incident, Plaintiff did not see Defendant Swift near his cell, but only heard someone kick the door. When Plaintiff looked out of his cell, Swift was on the opposite side of the tier. Plaintiff did not testify about anything Swift said that would indicate Swift knew about the razor blade when Plaintiff handed it to a nurse. Unlike the October 25, 2010 incident, there was no evidence presented that razors were not already present in Plaintiff's cell on May 26, 2011—for instance, in the possession of a cellmate or hidden away.

Similarly, during the March 6, 2012 incident, Plaintiff did not see Defendant Swift place a razor blade in his cell. He merely concluded Swift did so because Swift was checking cells at that approximate time. Again, there was no evidence presented that razors were not present in Plaintiff's cell on that occasion prior to Defendant Swift's proximity to the cell. Moreover, concededly, another officer was also present on the cell block at that time, but Plaintiff surmised only Swift was responsible for providing the razor.

Plaintiff failed to present sufficient evidence for the Court to conclude that it is more likely than not that Defendant Swift placed the razor blades in Plaintiff's cell. As the record stands, it is just as likely that the razor blades were in Plaintiff's cell the entire time. The Court is not required to make inferences in Plaintiff's favor at this juncture, and it declines to do so given the lack of evidence to support Plaintiff's conclusions.

Further, the Court does not find that Plaintiff was able to fully and accurately recount the events nor statements attributed to the Defendants. At the time of the events, Plaintiff was heavily medicated and was variously suffering from hallucinations. Understandably, Plaintiff could not testify from memory, repeatedly read from his complaint to refresh his memory and to testify, and was subject to numerous leading questions on direct. In light of the lack of evidence presented to corroborate his claims and in light of Plaintiff's inability to reliably observe and testify as to the events, the Court concludes that Plaintiff did not establish by a preponderance of the evidence that any particular Defendant, individually or by agreement, placed razor blades in his cell in deliberate indifference to the substantial risk those items posed to Plaintiff or that any Defendants agreed to conceal evidence of such actions. Given these finding, Plaintiff cannot, as a matter of law, maintain his claims against Defendants.

//

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 13

**Revocation of In Forma Pauperis Status**

Pursuant to 28 U.S.C. § 1915(a)(3), "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith." The good faith standard is an objective one, and good faith is demonstrated when an individual "seeks appellate review of any issue not frivolous." *See Coppedge v. United States*, 369 U.S. 438, 445 (1962). For purposes of 28 U.S.C. § 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

The Court finds that any appeal of this Order would not be taken in good faith and would lack any arguable basis in law or fact. Accordingly, the Court hereby revokes Plaintiff's *in forma pauperis* status.

//

//

//

//

//

//

//

//

//

**IT IS HEREBY ORDERED:**

1. Defendants' oral Rule 52(c) motion is **GRANTED**. Based upon the foregoing findings of fact and conclusions of law, Defendants are entitled to judgment pursuant to Federal Rule of Civil Procedure 52(c).

2. Plaintiff's in forma pauperis status is **REVOKED.**

The District Court Executive is hereby directed to enter this Order, enter **JUDGMENT** for Defendants on all claims, provide copies to counsel, and **CLOSE** the file.

**DATED** March 25, 2015.



THOMAS O. RICE
United States District Judge

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 15